[No. D017045. Fourth Dist., Div. One. Sept. 25, 1992.]

CALIFORNIA PHYSICIANS' SERVICE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JEFFREY B. LANDA et al., Real Parties in Interest.

## COUNSEL

Hassard, Bonnington, Rogers & Huber, Rick C. Zimmerman and B. Thomas French for Petitioner.

No appearance for Respondent.

Zelle & Larson and Denise Schardein for Real Parties in Interest.

## OPINION

**FROEHLICH, J.**—The petitioner, California Physicians' Service, doing business as Blue Shield of California (Blue Shield), seeks extraordinary review of the superior court's overruling of its demurrer to the plaintiffs' supplemental complaint. The supplemental complaint attempts to state a cause of action in tort for the filing of bad faith or malicious defensive pleadings. The filing of defensive pleadings is clearly a privileged communication which cannot be the basis for a retaliatory action in tort. The superior court was under an obligation to terminate this spurious cause of action. Its failure to do so, and the absence of any other adequate remedy to forestall this claim, warrants our issuance of extraordinary relief. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

### PROCEDURAL BACKGROUND

Since we deal here with a ruling on demurrer, our facts are taken from the complaint. Plaintiff father purchased from Blue Shield a medical health coverage insurance policy for the care of his minor son.[1] During the period of effectiveness of the policy, plaintiff son was injured, requiring treatment

---

[1]Plaintiffs' pleadings assert that the relationship between Blue Shield and plaintiffs was that of insurer and insured, inferring broadly that Blue Shield is an insurance company. Blue Shield, in its memorandum of points and authorities, avers that it is a licensed nonprofit health

which cost $1,212. Although properly notified of the claim, Blue Shield failed to pay in accordance with the terms of the policy. Plaintiffs' amended complaint encapsulates this delict in terms of tortious breach of the insurance contract, fraud (by advertising a policy which the issuer did not intend to carry out), breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress (by groundlessly refusing to pay policy benefits).

Blue Shield answered with a general denial and 11 specific affirmative defenses, including such allegations as that any benefits due had been paid, that the father in his individual capacity had no standing as plaintiff, that the plaintiffs had failed to mitigate damages, that plaintiffs were contributorily and comparatively negligent, and that the superior court lacked jurisdiction over the claim by reason of the Employee Retirement Income Security Act of 1974 (ERISA, an allegedly applicable federal act).

Plaintiffs countered by seeking and obtaining permission to file, and filing, a supplemental complaint. The supplemental complaint sought damages for breach of the duty of good faith and fair dealing and for the intentional infliction of emotional distress. The genesis of these additional damages was Blue Shield's filing of its general denial and affirmative defenses. What might seem to the uninitiated a bland and colorless example of boilerplate pleading is alleged to have caused "further emotional distress" to the plaintiffs because it constitutes "conducting spurious, untenable and unprivileged defenses intended to cause further emotional distress to [plaintiffs, and to cause plaintiffs] to discontinue litigation and to enter into an unreasonable settlement . . . ." Plaintiffs by their averments in the supplemental complaint highlight as examples of tortious pleading:

—the denial of agency by the person who sold the policy;

—the assertion that the father had no standing as plaintiff;

—the assertion that the father made misrepresentations in purchasing the policy;

care service plan operating pursuant to the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.), and that it is not an insurance company. This status is borne out by the health care contract, attached by plaintiffs as exhibit A to their complaint. We deem this possible factual dispute not to be significant, however, assuming (although certainly not determining) that a health care provider sponsoring a prepaid health care plan stands in the same quasi-fiduciary capacity as respects its plan beneficiaries as does an insurance company. We therefore treat Blue Shield in this opinion as the provider of contractual benefits similar to those made available by an insurance company.

—the contention plaintiffs acted negligently and improperly;

—the interposition of the alleged bar of ERISA.

These and other defenses of Blue Shield are characterized by plaintiffs as spurious and untenable defenses, attempts to "try out an untested legal argument against its own insured," and generally unprivileged and unreasonable acts which constitute a continued violation and breach of Blue Shield's duty of good faith and fair dealing.

Blue Shield filed a general demurrer to the supplemental complaint. After full briefing and oral argument the court took the demurrer under submission and subsequently issued a written order overruling the demurrer. The court ruled that an insurer's duty to act in good faith continues after litigation is filed, that the interposition of defenses which are "patently untenable" would constitute bad faith, and that it would be inappropriate to attempt to determine which if any defenses fit this category at the demurrer stage.

## DISCUSSION

■ Broadly but nevertheless accurately speaking, there is no tort of "malicious defense." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 52 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)[2] The mainstay supporting this principle is the absolute privilege contained in Civil Code section 47, subdivision (b) for "[a] . . . publication . . . [i]n any . . . judicial proceeding." The most recent and complete analysis of the privilege is contained in *Silberg* v. *Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365]. ■ Selecting appropriate serial quotes from this case, commencing on page 213 and continuing to page 216,[3] we find:

"The principal purpose of section 47(2) is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being

---

[2]"The policy of the rule is obvious. If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action . . . . Under our jurisprudence the defendant may present any defense . . . that he may have or that he may deem expedient, and in so doing he will not be subjecting himself to a second suit by the plaintiff based on the wrongful conduct of the defendant in causing the plaintiff to sue him or in defending the action. The rule is the same even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent. [Citations.]" (*Ritter* v. *Ritter* (1943) 381 Ill. 549 [46 N.E.2d 41, 44] [considering whether a successful plaintiff may recover attorney fees and expenses in a subsequent action against the unsuccessful defendant].)

[3]The statutory references in *Silberg* were to the predecessor of current Civil Code section 47, subdivision (b), which was section 47, subdivision (2).

harassed subsequently by derivative tort actions. [Citations.] [¶] Section 47(2) . . . promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. . . . [¶] [S]ection 47(2), the litigation privilege, has been referred to as 'the backbone to an effective and smoothly operating judicial system.' [Citation.] [¶] To effectuate its vital purposes, the litigation privilege is held to be absolute in nature. . . . [It] has been held to immunize defendants from tort liability based on theories of abuse of process [citations], intentional infliction of emotional distress [citations], intentional inducement of breach of contract [citations], intentional interference with prospective economic advantage [citation], negligent misrepresentation [citation], invasion of privacy [citation], negligence [citation], and fraud [citations]. The only exception to application of section 47(2) to tort suits has been for malicious prosecution actions. . . ."

How, then, in the face of this clear and persuasive authority, can the plaintiffs contend that the interposition of false defenses to their complaint gives rise to additional damages? Their theory is that insurance company defendants who have engaged in bad faith denial of claims do not have the same privileges in terms of defensive pleadings as do other defendants. This contention might be deemed ludicrous but for the fact that the composite opinions in *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309] (hereafter *White*) may be construed to point in this direction.

*White* was an action against a title insurance company for bad faith failure to indemnify property owners for damages caused by reliance upon a defective preliminary title report. The title company appealed an adverse jury verdict and judgment, asserting as error the trial court's admission as evidence of bad faith the insurance company's midlitigation offers of settlement. The insurance company's contention was that, once it had been sued by its client it became an adversary and owed no further duty of good faith. It also relied upon Evidence Code section 1152, which precludes admission in evidence of settlement offers.

The majority in *White* first enunciated a proposition as to which there really cannot be great dispute: that when a contractual relationship between parties continues in effect after litigation commences, the contractual duties of fair dealing and good faith remain in force. The court's additional pronouncements, however, did indeed introduce highly disputable concepts. Evidence Code section 1152 precludes, the court stated, the admission of offers in compromise for the purpose of proving *liability* in the underlying

action. Where the matter is offered not to establish initial liability, but only as evidence of bad faith in administering the claim (i.e., the making of a ridiculously low offer) the evidence is not excluded. (*White, supra,* 40 Cal.3d at pp. 887-889.)

It is to be noted that *White* dealt with communications following the filing of litigation which did not constitute part of any pleading. Whether such communications could be deemed made "in . . . a judicial proceeding" and therefore privileged under Civil Code section 47 was a matter upon which, the Supreme Court stated, there was no case authority. Without deciding this issue, the Supreme Court resolved the question by making a distinction between "a cause of action based squarely on a privileged communication" and "one based upon an underlying course of conduct evidenced by the communication." (*White, supra,* 40 Cal.3d at p. 888.) Since the offers in compromise in *White* were utilized merely as *evidence* of the prior course of tortious conduct, they were admissible.

On this ground, *White* is distinguishable from the case at bar and does not constitute authority for plaintiff's contention. The conduct cited in the amended complaint as constituting grounds for additional damages is a judicial pleading, clearly within the privilege of Civil Code section 47.[4] The effort here is not to use trial tactics as *evidence* of prior bad faith, but to mount a new cause of action for severable damages on the theory of an action for bad faith defense.

While plaintiffs may not find authority for their position in the majority opinion in *White,* they may, curiously, find support for their arguments in the dissent. The majority emphasized the difference between using trial tactics as evidence of a bad faith attitude on the part of a defendant, as distinguished from founding an action upon the tactics themselves. (*White, supra,* 40 Cal.3d at p. 888.) Justice Grodin in his concurring opinion assured that "An Insurer must have the right to defend itself in court against claims it believes

---

[4]At oral argument counsel for plaintiffs articulated what we conceive to be an attempt at a fallback position. The supplemental complaint did not attempt to state a completely new cause of action, it was argued, but was merely for the purpose of alerting opposing party to plaintiffs' intent to utilize the allegations of the answer as further evidence of bad faith. We do not buy this argument. It is not necessary and certainly not customary to telegraph by pleadings one's intent to introduce evidence relevant to prior pleadings. More to the point, the literal terms of the supplemental pleading state a new cause of action and allege new damages by reason of the defensive pleadings ("Blue Shield has breached this duty of good faith and fair dealing . . . by, inter alia, conducting spurious, untenable and unprivileged defenses intended to cause further emotional distress to Landa . . . [and] has, inter alia, defended in bad faith and continues to defend its case in bad faith . . . .") This, therefore, is not a case of attempted use of trial tactics merely as *evidence* of prior bad faith.

to be without merit, and the normal rules of litigation should be adequate to protect against abuse. . . ." (*Id.* at p. 891.) The chilling language in *White* comes from dissenting Justice Lucas, who said that "Nothing in the majority opinion limits introduction of evidence regarding tactics during the earlier trial to attempts to settle. *Any* aspect of the defendant's 'conduct' during the first trial will now be fair game. A plaintiff may argue that an answer filed by a defendant, or a defendant's motion for extension of time, or request for interrogatories, or any other action taken by a defendant in the course of defending the original litigation involving coverage is relevant to the issue of the defendant's good faith." (*Id.* at p. 895, original italics, fn. omitted.)

Plaintiffs have taken the cue from the dissent, and assert that Justice Lucas is correct when he states that, according to the majority, defensive pleading may now constitute the basis for, or at least evidence of, bad faith.

We have some doubt as to the current vitality of *White*, even for the more restricted view of its ratio decidendi attributed to it by Justice Grodin. Commentators have criticized the decision.[5] Justice Brauer in a concurring opinion in *Palmer* v. *Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 542 [238 Cal.Rptr. 363] (hereafter *Palmer*), stated that "*White* . . . seriously compromises the right of [insurance companies] to defend themselves in court. I hope our Supreme Court will find an early opportunity to reexamine that decision."

The Supreme Court has to date *not* reexamined *White*.[6] Treatment of the *White* precedent by the Courts of Appeal has, however, to the extent such is possible by the intermediate appellate courts, limited its application. In

---

[5]In Weinstein, *Common Law Bad Faith in White* v. *Western Title Insurance Co.: The Duty Continues* (1987) 21 Loyola L.A. L.Rev. 399, 400, the "negative practical effects" of the decision were noted, the commentator suggesting that "*White* places undue hardship on both insurers and their attorneys when attempting to defend against a first-party bad faith action." *White* "represents an unwarranted and unfair extension in the area of bad faith litigation. This decision threatens unjustly to thrust insurers in the precarious position of being subject to astronomical awards while being denied the ability to defend themselves effectively. The California Supreme Court has declared open season on insurance companies and has stripped them of their ability to retaliate. . . ." (*Op. cit. supra*, at p. 447.)

[6]The Legislature has apparently recognized the rule established by *White*, but has not attempted to modify its central principle. An amendment to Evidence Code section 1152 adopted in 1987 recognized that "evidence of an offer to compromise [might be] admitted in an action for breach of the covenant of good faith and fair dealing," but provided only that in such event all other offers to compromise must be admitted. *White* had admitted initial offers to compromise but excluded the defendant's later increased offer on the ground that since it was made after liability had been established it had little relevance to the question of good faith. (*White, supra*, at p. 889; and see *Maler* v. *Superior Court* (1990) 220 Cal.App.3d 1592, 1600, fn. 5 [270 Cal.Rptr. 222].)

*Palmer* a large judgment for punitive damages was reversed because of the introduction in evidence, in the jury trial, of "defendant's litigation tactics." The Court of Appeal distinguished *White* by noting that its context was in "a special relationship between insurer and insured" (while the *Palmer* action was for breach of contract in the sale of an automobile). (*Palmer, supra*, 193 Cal.App.3d at p. 538.) The *Palmer* court rejected "the suggestion *White* be extended beyond the insurance setting," saying "once litigation has commenced, the actions taken in . . . defense are not, in our view, probative of whether defendant in bad faith denied the contractual obligation prior to the lawsuit." (*Palmer* at p. 539.)

In accord with *Palmer* was *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552 [282 Cal.Rptr. 181]. The judgment that was the subject of appeal was for bad faith denial of the existence of a brokerage contract. Under the subtitle "A Denial of an Agreement in a Pleading Cannot Serve as a Basis for Tort Liability" the court affirmed that once litigation has commenced, actions taken in defense are not probative of the alleged previous bad faith. The court summed up: "to permit a plaintiff to impose tort liability upon a defendant for positions asserted in pleadings not only imposes an unfair burden on the conduct of a defense but conflicts with the well-accepted rule which permits the assertion of two or more inconsistent pleas. . . ." (*Id.* at p. 575.) It is interesting to note that the *DuBarry* court enunciated these principles without so much as referring to the existence of *White*.

Finally, we review *Nies* v. *National Auto. & Casualty Ins. Co.* (1988) 199 Cal.App.3d 1192 [245 Cal.Rptr. 518]. This was an appeal by an insurance company of a judgment for bad faith refusal to pay a claim based upon uninsured motorist coverage. At trial the plaintiff was permitted, over objection, to introduce as evidence of the bad faith the responsive pleadings of the insurer, which had denied the plaintiff's claim. The judgment was reversed, the court holding that the use of defensive pleadings to show bad faith in the previous failure promptly to pay the claim was inappropriate and prejudicial. The court distinguished *White* as follows:

"The [Supreme Court] decided only that the initiation of litigation was not the controlling factor in determining admissibility. The court did not decide specifically what types of postlitigation activity would or would not be relevant or admissible on the issue of bad faith, nor did it address the policy issues involved in permitting a lay jury to impute improper motives to the imposition of a legally proper defense. Thus, *White* is not authority for declaring that the disputed evidence in this case was relevant." (*Nies* v. *National Auto. & Casualty Ins. Co., supra*, 199 Cal.App.3d at p. 1202.)

We will follow the lead of the *Nies* v. *National Auto. & Casualty Ins. Co.* court. *White* stands for the proposition that ridiculously low statutory offers of settlement may be introduced in a bifurcated trial, after liability has been established, as bearing on the issue of bad faith of the insurance company. While we deal here, also, with parties in an insurance relationship, the other factors surrounding the plaintiffs' contentions are quite different. The communication sought to be used as the basis for the plaintiffs' claim is defensive pleading, matter literally the subject of immunity under Civil Code section 47, subdivision (b), rather than a communication somewhat ancillary to documents filed in the court file, as are settlement communications. ██ Further, the effort is to utilize the pleadings as the *basis* for the claim of bad faith, rather than only as *evidence* of prior bad faith.[7]

### SUMMARY AND DISPOSITION

Defensive pleading, including the assertion of affirmative defenses, is communication protected by the absolute litigation privilege. Such pleading, even though allegedly false, interposed in bad faith, or even asserted for inappropriate purposes, cannot be used as the basis for allegations of ongoing bad faith. No complaint can be grounded upon such pleading. The demurrer to this supplemental complaint should therefore have been sustained. ██ Let the writ of mandate issue requiring the superior court to sustain the demurrer.[8] Our prior order staying depositions is vacated.

Kremer, P. J., and Huffman, J., concurred.

---

[7]We are satisfied to base our decision on the conclusion that the pleadings were sought to be used in and of themselves as tortious communications giving rise to a claim for bad faith, as distinguished from the use of pretrial tactics in *White* as evidence of prior bad faith. However, we are also satisfied that the broad privilege established by Civil Code section 47, subdivision (b) precludes the use of defensive pleadings as "evidence" of prior bad faith. In this case for instance, at eventual trial of the claim set forth in the first amended complaint, the plaintiffs should not be permitted to introduce the defensive pleadings which form their supplemental complaint as "evidence" of the bad faith alleged in the first amended complaint.

[8]We have discussed this case in terms of the allegation of damage because of interposition of bad faith defenses. The supplemental complaint was framed in two counts, one for bad faith and one for infliction of emotional distress. The emotional distress was, of course, the alleged direct result of the bad faith defense. In a sense, therefore, it was not the stating of a separate cause of action, but the articulation of a different concept of damages from the same cause of action. If a communication is absolutely privileged it cannot be tortious, and it matters not that its publication may cause someone emotional distress.