[No. D016409. Fourth Dist., Div. One. June 20, 1994.]

DENISE TOMASELLI et al., Plaintiffs and Appellants, v. TRANSAMERICA INSURANCE COMPANY et al., Defendants and Respondents.

## Counsel

Winters & Associates, Jack B. Winters, Jr., Thompson & McIntyre and Lann G. McIntyre for Plaintiffs and Appellants.

Horvitz & Levy, Barry R. Levy, Daniel J. Gonzalez, Christine T. Hoeffner, Higgs, Fletcher & Mack, Gregg F. Relyea, Crosby, Heafey, Roach & May, James C. Martin, Kathy M. Banke and Linda M. Salem for Defendants and Respondents.

## Opinion

**FROEHLICH, J.**—This appeal revisits the dispute between Dominick and Denise Tomaselli (Tomasellis) and Transamerica Insurance Company. The dispositive issue is whether an insured, after suing his insurer for failure to pay a claim and recovering a judgment, may again sue if the insurer does not immediately pay the judgment. The trial court concluded such a cause of action could not be asserted. We agree and thus affirm.

### 1. *Facts*

We summarily state the relevant facts.[1] In the first lawsuit (hereafter action one) Tomasellis sued Transamerica for refusing to pay a claim they made in 1987 on their homeowners policy. In action one, Tomasellis alleged that failure to pay their claim was both a breach of contract and in bad faith. Tomasellis sought, and the jury awarded, compensatory and punitive damages which encompassed damages for both breach of contract and bad faith.

---

[1]On appeal from an order sustaining a demurrer without leave to amend, we accept as true all properly pleaded factual allegations (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]) but disregard the contentions, deductions or legal hyperbole which might surround those allegations. (*Sklar* v. *Franchise Tax Board* (1986) 185 Cal.App.3d 616, 621 [230 Cal.Rptr. 42].)

Part of the award in action one was a $260,000 award for breach of contract damages.

After the verdict was entered in action one, Tomasellis demanded that Transamerica either pay their claim (i.e., the $260,000 portion of the verdict in action one representing contract benefits) or explain why it would not be paid. Respondents refused. Accordingly, on August 26, 1991, Tomasellis filed this lawsuit (hereafter action two), pleading claims for breach of the implied covenant of good faith, bad faith denial of contract, conspiracy, and intentional infliction of emotional distress. The "wrongful conduct" underlying all of these claims was Transamerica's refusal either to pay the contract portion of the judgment in action one or to explain why it would not be paid.[2]

### 2. *The Demurrer*

Respondents demurred to the complaint. Their central argument was that there is no claim in tort for failure to pay a judgment, allowing them to prosecute an appeal from an unfavorable judgment without incurring tort liability. Tomasellis argued they were not seeking to recover for failure to pay the judgment. Instead, they argued, the suit was based on failure to pay their claim, and they urged such a suit was maintainable despite the prior judgment because an ongoing duty of good faith survived entry of the judgment in action one.

The trial court sustained the demurrer without leave to amend, reasoning that postverdict conduct regarding the 1987 claim was not actionable. It alternatively ruled that because the appeal was pending in action one, no claim based on postverdict conduct was ripe.

### 3. *Where An Insured Sues for Breach of Contract and Breach of the Implied Covenant of Good Faith Based on Failure to Pay a Claim, a Judgment in Such Lawsuit Merges All Rights Into That Judgment, and Any Further Rights Are on the Judgment Rather Than on the Original Claim*

The current lawsuit seeks recovery based on respondents' failure to pay the same claim which was the subject of action one. Tomasellis essentially argue that an insured, having recovered both contract and tort damages

---

[2]Respondents to date have not paid the judgment. At the time action two was filed, execution on the judgment had been stayed by court order. Transamerica thereafter timely appealed action one and posted the required bonds to stay execution on that judgment pending appeal.

for failure to pay the original claim, may generate a new and distinct tort claim merely by renewing demand for payment of the same claim previously adjudicated. Tomasellis' theory is that the postjudgment refusal to pay constitutes a new, distinct and separately actionable "failure to pay the claim."[3] We disagree.

■ When a party recovers a judgment for breach of contract, entry of the judgment absolves the defendant of any further contractual obligations, and the judgment for damages replaces the defendant's duty to perform the contract. (*Coughlin* v. *Blair* (1953) 41 Cal.2d 587, 598 [262 P.2d 305].) Upon entry of judgment, all further contractual rights are extinguished, and the plaintiff's rights are thereafter governed by the rights on the judgment, not by any rights which might have been held to have arisen from the contract. (*Chelios* v. *Kaye* (1990) 219 Cal.App.3d 75, 80 [268 Cal.Rptr. 38].)

■ Here, Tomasellis held the contractual right to be paid on their 1987 claim.[4] The judgment in action one extinguished that contractual right, the judgment entirely replacing it. Thus, upon entry of that judgment Tomasellis had no further contractual right as "insureds" to payment of their claim, but instead acquired such rights as are accorded a judgment creditor.

We thus evaluate whether Tomasellis can assert a claim for bad faith in their new status as judgment creditors. The answer, as provided by *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083], is that a judgment creditor may *not* sue for "bad faith" damages if the judgment debtor chooses to appeal rather than pay, even though the judgment debtor is an insurer.[5] *Coleman* reasoned the fundamental nature of the right to appeal should not be undermined by post hoc jury

---

[3]It is unnecessary to decide the distinct issue of which tort claims might have been viable had action one been limited to a breach of contract claim without joinder of the claim for breach of the implied covenant. (*General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 828 [220 Cal.Rptr. 291].) Because Tomasellis did assert their tort claims in action one, res judicata bars a second attempt to recover on those claims. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].)

[4]We of course recognize that the obligations owed by an insurer arising from its contract are broader than those ordinarily owed by contracting parties. The failure to pay benefits owed under a policy is both a breach of contract, entitling the insured to contractual damages, and a potentially tortious breach of the implied covenant of good faith and fair dealing. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574-575 [108 Cal.Rptr. 480, 510 P.2d 1032].) However, both sets of obligations, in contract and in tort, spring from and depend on the existence of the contractual duty to pay. (*Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151-1153 [271 Cal.Rptr. 246].)

[5]We recognize that *Coleman* evaluated the issue in a third party context, and declined to decide whether the same rule might apply to first party claimants (41 Cal.3d at pp. 794-795), such as Tomasellis. We nevertheless perceive *Coleman* as controlling. *Coleman* was decided in an era when third parties had "Royal Globe" rights to assert bad faith. *Coleman* specifically

determinations in a bad faith action. Instead, *Coleman* concluded that if an appeal is deemed frivolous, remedies are to be pursued under the court's sanction power, subject to the constraints and cautions articulated in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]. (*Coleman, supra,* 41 Cal.3d at pp. 791, 796-797.)

Tomasellis attempt to sidestep *Coleman* by arguing they are not seeking damages for malicious appeal or for failure to pay the judgment. Instead, they assert, their lawsuit seeks recovery based on a new breach of the obligation of good faith and fair dealing. They identify this "new breach" as the bad faith refusal to pay their claim *after* judgment was entered in action one. The predicate to this argument is Tomasellis' contention that Transamerica's obligation of good faith and fair dealing *continued after entry of the judgment,* since without such a duty there is nothing to be breached.

We reject Tomasellis' argument of a "continuing duty," because the obligation of "good faith" conduct does not exist independent of an express contractual obligation, but must be appurtenant to express contractual duties. In that the express contractual duty no longer exists here, having been merged into the judgment, the auxiliary implied covenant evaporates. In *Racine & Laramie, Ltd.* v. *Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026 [14 Cal.Rptr.2d 335], this court explained the basic nature of the implied covenant: "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-684, 689-690 . . .) 'The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' (*Id.* at p. 690.)" (11 Cal.App.4th at pp. 1031-1032.)

Tomasellis cite no relevant authority to suggest that the insurer's obligations of good faith survive even though the express contractual duty to pay their claim has been transformed from a contract right into a judgment. Tomasellis' position appears to be based entirely on language from *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309]. Tomasellis' reliance on *White* is misplaced. *White* does not hold that

---

examined whether a failure to pay a judgment would be actionable as a violation of Insurance Code section 790.03, subdivision (h)(5), which requires an insurer to attempt "in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (*Coleman* v. *Gulf Ins. Group, supra,* at p. 795.) Here, Tomasellis' "bad faith" claim rests on the common law analogue to Insurance Code section 790.03, subdivision(h)(5). (*Kelly* v. *Farmers Ins. Exchange* (1987) 194 Cal.App.3d 1, 6 [239 Cal.Rptr. 259] [Ins. Code, § 790.03, subd. (h) codifies tort of breach of the implied covenant].) Thus, we view Tomasellis' efforts to avoid or distinguish *Coleman* as ineffective.

postjudgment conduct is independently actionable; it is concerned only with whether an insurer's obligations of good faith terminate once a breach of contract lawsuit is *filed*. (*Id.* at p. 885.) Its conclusion that good faith obligations remain despite pending litigation was based on an analysis which began with the following crucial predicate observation: "It is clear that the contractual relationship between insurer and the insured does not terminate with commencement of litigation." (*Ibid.*) Given that predicate, it is hardly surprising that *White* concluded all of the incidents of that contractual relationship, including obligations of good faith, remained extant. Here, however, the opposite is true. No contractual duty to pay the claim survived the judgment. *White*'s pronouncements are irrelevant to assessing whether only postjudgment obligations are owed.

At bottom, Tomasellis argue that good faith obligations can be breached even though there are no surviving express contractual obligations owed by the insurer. In *Love* v. *Fire Ins. Exchange, supra*, 221 Cal.App.3d 1136, this court rejected an analogous contention. The plaintiffs in *Love* contended that even if they had no surviving contract rights to payment of their claim, they could still state a claim for breach of the implied covenant based on the insurer's failure to timely reject their claim. This court observed: "Our conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted. The covenant of good faith and fair dealing is implied in law to assure that a contracting party 'refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement.' (*Egan* v. *Mutual of Omaha Ins. Co.* [1979] 24 Cal.3d [809], 818 [157 Cal.Rptr. 482, 598 P.2d 452].) In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. . . . Absent [the] primary right, however, the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." (*Id.* at p. 1153, italics in original.)

### 4. *Tomasellis' Remaining Claims Also Fail*

Tomasellis pleaded a count for intentional infliction of emotional distress. This count adds nothing to their complaint. In *California Physicians' Service* v. *Superior Court* (1992) 9 Cal.App.4th 1321 [12 Cal.Rptr.2d 95], the plaintiff pleaded claims for bad faith and for intentional infliction of emotional distress, both of which were premised on the same conduct: the filing of defensive pleadings by the insurer. After concluding there was no actionable bad faith because the alleged wrongful conduct was privileged, this

court also concluded the emotional distress claim failed: "We have discussed [the viability of bad faith claims] in terms of the allegation of damage because of interposition of bad faith defenses. The supplemental complaint [also pleaded a count for] emotional distress. The emotional distress was, of course, the alleged direct result of the bad faith defense. In a sense, therefore, it was not the stating of a separate cause of action, but the articulation of a different concept of damages from the same cause of action. If [conduct] is absolutely privileged it cannot be tortious, and it matters not that [it] may cause someone emotional distress." (*Id.* at p. 1330, fn. 8.)

Since Transamerica had no obligation to pay the judgment, its refusal to do so was not actionable, even though Tomasellis may well be distressed by the delays attendant to the appellate process.

Also without merit is Tomasellis' count for "bad faith denial of contract" (under *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158]). The essence of a "*Seaman's*" claim is that a contracting party ". . . not only breaches the contract but also denies in bad faith that a contract even exists. The inherent precondition to such a tort claim is the existence and breach of an enforceable contract." (*Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 57 [248 Cal.Rptr. 217].) That "inherent precondition" is absent here. After issuance of the judgment, no contractual obligation to breach remained.

### 5. *Sanctions Against Tomasellis Are Denied*

Respondents request sanctions, arguing Tomasellis' appeal is frivolous under *In re Marriage of Flaherty, supra,* 31 Cal.3d 637. The *Flaherty* court declared sanctions may be imposed when an appeal is frivolous, and set forth two alternative tests for determining a frivolous appeal. The first test is subjective: Was the appeal prosecuted solely for an improper motive, such as to harass the respondent or delay the effect of an adverse judgment? (*Id.* at p. 649.) There is no evidence the appeal's purpose was solely to harass or delay, nor is there any suggestion of what benefits Tomasellis obtained from delay.

The second strand of *Flaherty* is objective: Was the appeal so indisputably without merit that any reasonable attorney would agree it was totally devoid of merit? (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637.) Tomasellis' theory of liability is one which "pushes the envelope," since it seeks to extend *White*'s pronouncements of a postlawsuit "continuing duty of good faith" beyond the boundaries previously recognized by published authority. However, the legacy of *White* has been the spawning of arguments for its

extension into new situations. (See generally, *California Physicians' Service* v. *Superior Court, supra,* 9 Cal.App.4th 1321, 1326-1330.) Tomasellis are simply heir to that legacy.

Sanctions should be used sparingly, and should not be used to deter attorneys from pressing arguable claims. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651.) Since Tomasellis' appeal presents a question of first impression under *White,* we will deny sanctions. (*In re Marriage of Levingston* (1993) 12 Cal.App.4th 1303, 1307 [16 Cal.Rptr.2d 100].)

#### DISPOSITION

The judgment is affirmed. Respondents' motion for sanctions is denied. Respondents are entitled to recover costs on appeal.

Work, Acting P. J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 8, 1994. Mosk, J., was of the opinion that the petition should be granted.