Filed 7/18/24  3H Investments v. Duncan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 3H INVESTMENTS, LLC, et al., | |
| Plaintiffs and Respondents, | G062498 |
| v. | (Super. Ct. No. 30-2019-01106394) |
| KATHLEEN DUNCAN, as Trustee, etc., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a postjudgment order of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Thomas Vogele & Associates, Thomas A. Vogele and Brendan M. Loper for Defendants and Appellants.

Law Office of Grant K. Peto and Grant K. Peto for Plaintiffs and Respondents.

# INTRODUCTION

Kathleen Duncan appeals from a postjudgment order awarding Richard Priest, Melissa Priest, and 3H Investments, LLC (3H) (collectively respondents) $29,290 in attorney fees and $1,289 in costs for enforcing a judgment. Duncan and respondents are members of Airport Storage, LLC, which Duncan managed for several years. After respondents sued Duncan and Airport Storage, an arbitrator ruled, among other things, that Airport Storage should be wound up. He awarded respondents certain attorney fees and costs and appointed respondents to take care of the winding up process. The trial court confirmed the award and entered judgment accordingly.

Respondents then moved in two stages for certain additional attorney fees and costs they had incurred. They filed their original motion in September 2022, shortly before Duncan paid the monetary portion of the judgment. They amended the motion in January 2023, asking for an additional $30,579 in fees and costs. The trial court awarded some of the fees and costs respondents requested in their original motion, but awarded them all the fees and costs requested by way of the amendment.

On appeal, Duncan has argued only this latter $30,579 award was erroneous. She asserts that respondents do not qualify for these fees because (1) the fees and costs were not incurred to "enforce" the judgment and, thus, are not recoverable under Code of Civil Procedure section 685.040,[1] and (2) their amended fee motion was untimely, since it was filed after she had paid the money portion of the judgment.

We affirm the order awarding attorney fees and costs pursuant to the amended fee motion. The motion was timely made, and the fees and costs involved were incurred to enforce the judgment.

---

[1] All further statutory references are to the Code of Civil Procedure.

2

**FACTS**

In 2006, Duncan, Chris Hoskins, and the Priests took title to a self-storage center in Chico by the name of Apple Mini Storage. They formed Airport Storage in 2008, with Duncan holding the majority interest in the limited liability company. They signed but did not record a quitclaim deed transferring their interests in the property to Airport Storage.

Duncan took over management of Airport Storage in 2010, from a company Hoskins had put in place. In 2011, Hoskins assigned his interest in Airport Storage to 3H.

In 2016, Duncan sued Hoskins based on allegations that do not directly involve Airport Storage. In 2019, respondents sued Duncan and Airport Storage. Pursuant to an arbitration provision in the company's operating agreement, the matter was sent to arbitration.

A hearing in arbitration was held from September 20 to September 23, 2021. After the hearing, the parties filed postarbitration briefs, in which they made their requests to the arbitrator as to the provisions of the award.

According to the arbitrator, "[m]any facts and disputed assertions regarding the management of the business were presented at the arbitration hearing." Among these were disagreements about characterizations of roof repairs as expenses rather than capital improvements and about members' access to company financial records. The arbitrator mentioned other disputes, but held that the award "will be limited in length as that is all that is necessary for proper resolution."

The core of the claims against Duncan was the alleged breach of her fiduciary duty to respondents as company manager. The arbitrator found that respondents' witnesses were "more credible over all" and that Richard and Melissa Priest "were particularly believable in their concerns about Duncan's self-interested conduct hurting their modest retirement investment." He also found respondents' expert

3

"particularly credible" in pointing out breaches of Duncan's fiduciary duty. Duncan ignored Hoskins' assignment of his interest in Airport Storage to 3H, damaging him by continuing to issue distribution checks and K-1 forms to him personally. Her actions during efforts to sell Airport Storage's real property improperly favored her unrelated personal interests. She withheld company records from respondents. The arbitrator concluded that Duncan had "breached her fiduciary duties of loyalty, care, and good faith."

The arbitrator ruled that Airport Storage should be dissolved, and he appointed respondents to wind it up. He awarded $176,280 in withheld distributions to 3H and costs to respondents. For her part, Duncan asked to be allowed to buy out the other parties if Airport Storage was to be dissolved. The arbitrator ruled that she could return to the arbitrator to ask for this relief if the matter could not be resolved otherwise.

After the arbitration award was issued in November 2021, a further hearing took place on January 26, 2022, concerning additional motions briefed during the previous December. The arbitrator agreed to rule on the following issues: an alleged miscalculation of damages, costs, attorney fees, prejudgment interest, and a "request Duncan return [Airport Storage] funds used to defend the action[.]" The parties agreed to a baseball arbitration as to attorney fees.

The arbitrator issued his Order on Concluding Matters on March 28, 2022. The order confirmed the amount of withheld distributions ($176,280), denied prejudgment interest, calculated costs ($11,240), and awarded attorney fees of $211,600.

Respondents filed two ex parte applications to confirm the award. The trial court held a hearing on May 31, 2022, regarding the wording of the judgment.

On August 25, 2022, the court entered judgment based on the arbitrator's award. The judgment (1) ordered the dissolution of Airport Storage, (2) appointed respondents to wind up the company, (3) awarded $176,280 to 3H plus interest from the

4

date of the judgment, and (4) awarded costs to respondents as prevailing parties, arbitration costs of $11,240, and attorney fees of $211,600.

On September 2, 2022, respondents filed a motion for attorney fees and costs in addition to those that formed part of the judgment, contending these additional amounts were incurred enforcing their rights as prevailing parties. They requested $44,250 in attorney fees and $376 in costs.

On September 22, 2022, respondents recorded an abstract of judgment for $399,120, which represented the awarded $176,280 to 3H and $222,840 to respondents for attorney fees and costs in the judgment. When the Airport Storage property was sold on September 30, 2022, Duncan paid this amount out of her share of the proceeds. Duncan also asserts she paid the accrued postjudgment interest in October 2022.

On January 11, 2023, respondents amended their September 2022 fee motion to request an additional $29,290 in attorney fees and $1,289 in costs, arguing these additional fees and costs were "incurred carrying out the Judgment's Decree of Dissolution and opposing the twelve ex parte applications and motions Duncan either filed or wrongfully opposed trying to avoid the judgment since [respondents] filed their costs motion." (Italics and bolding omitted.)

On March 30, 2023, the trial court ruled on both requests. As to the amounts requested in the original motion, the court awarded $38,700 in fees and $376 in costs, a reduction of $5,550. The court awarded the entire amount requested in the amended fee motion: $29,290 in fees and $1,289 in costs.

Duncan challenges only the amounts awarded pursuant to the amended fee motion: $29,290 in attorney fees and $1,289 in costs.[2]

---

[2] In certain parts of her briefing, Duncan erroneously states that the costs awarded pursuant to the amended fee motion were $1,665.28.

5

## DISCUSSION

On appeal, Duncan makes two arguments regarding the fees and costs awarded pursuant to respondents' amended fee motion: First, the fees and costs were not incurred to enforce the judgment and, thus, not recoverable; and second, the amended fee motion was untimely. Each of these arguments is unavailing.

### I.        Enforcement of Judgment

As an initial matter, we begin by addressing Duncan's argument that the judgment extinguished the operating agreement, including the attorney fee clause.[3] This argument is incorrect.

As this court held in *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770, "[w]hen a party recovers a judgment for breach of contract, entry of the judgment absolves the defendant of any further contractual obligations, and the judgment for damages replaces the defendant's duty to perform the contract. [Citation.] Upon entry of judgment, all further contractual rights are extinguished, and the plaintiff's rights are thereafter governed by the rights on the judgment, not by any rights which might have been held to have arisen from the contract. [Citation.]" The critical language for this analysis is "a judgment for breach of contract."

The judgment in this case was not one for breach of contract, and it did not extinguish the attorney fee clause. To the extent it was for any cause of action, it was for a tort – breach of fiduciary duties of "loyalty, care, and good faith." The judgment

---

[3]        The Airport Storage operating agreement provides the following: "In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs, and expenses of enforcing any right of the prevailing party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate allowed by law. For the purposes of this Section: (a) attorney fees shall include, without limitation, fees incurred in the following: (1) postjudgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation and (b) prevailing party shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise."

included an order to wind up the business. The Airport Storage operating agreement governs the dissolution and winding up of the business. And significantly, the operating agreement governs the relative interests of each member. Duncan received 57 percent of the proceeds of the sale of the company's real estate because the operating agreement, still in effect, afforded her that right.

In any event, Duncan recognizes section 685.040 can authorize fees and costs even if the judgment has extinguished the attorney fee clause. Section 685.040 provides "[t]he judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Thus, under section 685.040, "there are two requirements before a motion for an award of postjudgment attorney fees may be awarded as costs: (1) the fees must have been incurred to 'enforce' a judgment; and (2) the underlying judgment had to include an award for attorney fees pursuant to . . . section 1033.5, subdivision (a)(10)(A), which provides that attorney fees may be awarded when authorized by contract." (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 935, fn. omitted.) Here, the underlying judgment included an award of attorney fees to respondents as permitted by the Airport Storage operating agreement. Duncan, however, argues the fees were not incurred in "enforcing" the judgment.

At this point, we pause to address another issue, one raised by respondents. Respondents ask us to dismiss Duncan's appeal because she omitted from the appellant's appendix "dozens of pleadings" they contend we need to review to decide whether the attorney fees were incurred to enforce the judgment. These pleadings, respondents maintain, support the amount requested in their amended fee motion.

7

As Duncan points out, if respondents believed that the record was incomplete without these pleadings, they could have filed their own appendix to include them. And it is not the *amount* of the fees that is in question, but rather respondents' entitlement to them.

On the other hand, the absence of these pleadings means that we must review the challenged portion of the attorney fees and costs order based on the documents Duncan has included in her appendix. A trial court's order is presumed correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; see also *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) When the record is silent, we indulge the intendments and presumptions to support it, "and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We must therefore start by assuming that the trial court correctly evaluated the evidence presented as to the necessity for the tasks respondents' counsel undertook to enforce the judgment, incurring the fees they requested. After all, the trial court was the recipient of most of the "dozens of pleadings" and was therefore well positioned to decide whether they dealt with enforcing the judgment.

The attorney fees requested in respondents' amended motion fell into two categories. The first was the fees incurred to close escrow for the sale of the Airport Storage real property on September 30, after respondents had filed their original fee motion. The trial court accepted respondents' representation that Duncan had not cooperated with the closing, requiring attorney time to ensure the deal would close.[4]

The second category was the fees incurred mostly for responding to efforts by Duncan to stave off the enforcement of the judgment. These included ex parte

---

[4] For example, respondents' counsel declared that Duncan had hung up on the real estate agent and escrow officer trying to close the sale. This occurred on September 26, 2022, four days before closing. On the day before closing, counsel's time records reflect "Multiple calls and emails from Brian Pedersen, buyer's attorney, re: missing closing documents from Duncan and threaten to file litigation and/or reduce purchase price if the property does not close on 9-30-22; work on issues re: same; multiple demand letters to Loper [Duncan's counsel]."

applications, requests for relief from the arbitrator, and various motions in the trial court. According to the court, respondents "present evidence that the attorney fees they incurred to respond to [Duncan's] filings [amounted to] $21,715; [and] if this sum is divided by fourteen (the number of filings by Duncan), this amounts to approximately $1,551 or 4.1 hours per motion, which is reasonable." The trial court clearly accepted respondents' representations that they were obliged to expend these fees to counter Duncan's efforts to thwart the judgment's execution. We must accept this view of the evidence as well, in support of the trial court's order.

Turning back to Duncan's argument, she contends the trial court committed a legal error because the only fees recoverable under section 685.040 for "enforcing" the non-monetary portion of the judgment are those incurred following section 717.010, which states "[a] judgment not otherwise enforceable pursuant to this title may be enforced by personally serving a certified copy of the judgment on the person required to obey it and invoking the power of the court to punish for contempt." Duncan also points to section 681.010, which provides "[e]xcept as otherwise provided by statute: [¶] . . . [¶] (e) A judgment requiring performance of an act not described in subdivisions (a) to (d), inclusive, or requiring forbearance from performing an act, is enforceable as provided in Chapter 5 (commencing with Section 717.010) of Division 3." According to Duncan, these two statutes establish that section 717.010 is the only proper enforcement of the non-monetary portion of the judgment, and because respondents did not pursue this contempt procedure, they were not properly "enforcing" the judgment. Under Duncan's reading, the only fees recoverable under section 685.040 for enforcing the judgment are those fees incurred to puruse the contempt process discussed in section 717.010.

It is not clear to us what exactly respondents could have enforced by means of contempt. According to the court's minute order, the bulk of the fees awarded pursuant to the amended motion were incurred responding to Duncan's efforts to stay enforcement, including ex parte applications in the court, additional requests for relief

9

from the arbitrator, and "four additional motions to try and avoid the [j]udgment[.]"  It appears to us that respondents were largely playing defense during this period.  It is difficult to imagine how a contempt order to show cause could plausibly be framed under such circumstances.  It seems unlikely a trial court would issue an order to show cause why the court should not hold a party in contempt for making motions in court and requests to the arbitrator.[5]  As to the sale of the property, it hardly seems likely that the contempt process could play itself out in time to assist the sale, given the tight deadlines.

More importantly, section 685.040 does not state that the only fees that qualify as "enforcing" the judgment are those incurred for acts listed in the statutes included in section 685.010, such as section 717.010.  Nor does Duncan point to any case so holding.  Instead, *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1274 (*Globalist*) is instructive.  There, this court held that the fees incurred by the judgment creditor for successfully defending a separate action brought by the judgment debtor qualified as "enforcing" the judgment under section 685.040.  (*Id.* at pp. 1274-1276.)  As this court explained, "[n]either section 685.040, nor the Enforcement of Judgments Law of which it is a part, ascribe any special meaning to the word 'enforcing.'  [Citation.]" (*Id.* at p. 1274.)  *Globalist* recognized "[t]he plain meaning of the word necessarily suggests 'enforcing a judgment' would include defending the validity of the judgment against challenge in a separately filed attack." (*Ibid.*)  While

---

[5]  "Punishment for contempt 'can only rest upon clear, intentional violation of a specific, narrowly drawn order.  Specificity is an essential prerequisite of a contempt citation. [Citations, fn. omitted.]' [Citation.]  It is not proper for a contempt citation to rest on an order 'which incorporates by reference the entire history of a complicated lawsuit.' [Citation.]  The precise court orders as written are what may be enforced, not any amplification of those orders by history of the litigation or documents incorporated by reference. [Citations.]" (*Board of Supervisors v. Superior Court* (1995) 33 Cal.App.4th 1724, 1737.)

*Globalist* did not involve a non-monetary judgment, its interpretation of "enforcing" undermines Duncan's argument.[6]

We conclude that section 685.040 authorizes an award of attorney fees and costs incurred in fending off a judgment debtor's efforts to sabotage the judgment. In other words, the fees and costs permitted under section 685.040 for "enforcing" a judgment include protecting the judgment from the judgment debtor's efforts to thwart the judgment's execution.[7] If it were otherwise, a judgment debtor could deploy the kinds of rear-guard actions used by Duncan in this case with no fear of consequences, believing the worst that could happen is the judgment debtor would be denied relief. In the meantime, however, the judgment creditor would have to incur thousands of dollars in fees to fend off these attacks and to deal with one delay after another, as happened here. The contempt process was not designed to remedy this kind of abuse.

## II.       Timeliness

Duncan also asserts the amended fee motion was untimely because it was filed after she had fully satisfied the judgment. Duncan says she paid the money judgment of $399,120 in September 2022 (and the postjudgment interest in October 2022), and the amended fee motion was not filed until January 2023. Duncan's

---

[6]       Our Supreme Court has similarly recognized "the Enforcement of Judgments Law does not define 'enforcement[.]'" (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 609 (*McQueen*).) *McQueen* examined whether fees, which were authorized by statute and incurred in defending the judgment on appeal, constituted fees incurred in enforcing the judgment, concluding they do not. (*Id.* at pp. 608-612.) *McQueen* stated, among other things, "[n]othing in our statutes or court rules suggests appellate fees come within the Enforcement of Judgments Law" and "[t]he statutes and rules distinctly address" appellate costs and fees, which are recoverable under section 1034, subd. (b) and California Rules of Court, rules 3.1702(c) and 8.278. (*Id.* at p. 608.) While *McQueen* noted the Enforcement of Judgments Law "addresses in detail several means of enforcing a judgment" and the procedures for appeal were not included there, *McQueen* did not hold that those means of enforcement presented the exclusive acts that define enforcing a judgment under section 685.040. (*Id.* at p. 609).

[7]       Duncan states in her *reply* brief that respondents listed her notice of appeal as one of the attempts to evade enforcement in their amended fee motion and "it remains unclear to Duncan how such filings constituted efforts to 'evade enforcement' of the Judgment." But she has not argued on appeal that a certain portion of the awarded fees was incurred for the appeal of the judgment and was not recoverable under section 685.040 because of *McQueen*. Such an argument would be waived in any event. (See, e.g., *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799).

timeliness argument, however, fails because the non-monetary portion of the judgment was not satisfied.

Section 685.080, subdivision (a), provides: "The judgment creditor may claim costs authorized by Section 685.040 by noticed motion. The motion shall be made before the judgment is satisfied *in full*, but not later than two years after the costs have been incurred." (Italics added.)

As the trial court correctly noted, although Duncan had satisfied the monetary portion of the judgment prior to filing the amended fee motion, the judgment had not been satisfied *in full* because it included an order to wind up Airport Storage. This non-monetary portion of the judgment had not been satisfied as of the date when respondents amended their motion, and therefore, the amended motion for fees and costs incurred to enforce the judgment was timely.

Duncan argues, however, that section 685.080 requires a fee motion be filed before the monetary portion of the judgment is satisfied in full, regardless of whether the non-monetary portion remains. She points to division 5 (§§ 724.010 et seq.), which is entitled Satisfaction of Judgment, and argues it provides the only means of satisfying a judgment and only references money judgments. Her argument is, at bottom, that the only judgments that can be "satisfied" are money judgments and only fees incurred enforcing a money judgment are recoverable.

This argument is unavailing. A "judgment" is "a judgment, order, or decree entered in a court of this state." (§ 680.230.) A "money judgment" is "that part of a judgment that requires the payment of money." (§ 680.270.) Section 724.010 expressly references a "money judgment[.]" Sections 685.040 and 685.080 apply to "judgments" in general, not only to "money judgments." In other words, when a statute applies only to a money judgment, the word "money" is included. There is no such restriction on the judgments referred to in sections 685.040 or 685.080.

Finally, Duncan contends that unless the attorney fee order is reversed, respondents can continue to file fee motions until *they* deem Airport Storage is dissolved, since they are the ones tasked with dissolving it. In effect, Duncan raises the specter that respondents could string out the dissolution process indefinitely in order to keep incurring fees all the while.

Duncan overlooks the requirement that the fees be reasonable. If the trial court were presented evidence of fees being incurred for an improper purpose, it is fully empowered to reduce the fees or to deny them altogether. Duncan's hypothetical fear of future unreasonable fee requests is not a ground for reversing the present fee order.[8]

## DISPOSITION

The attorney fees and costs order is affirmed. Respondents are to recover their costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

---

[8] Respondents have included a request for attorney fees on appeal. Costs on appeal are recoverable under section 1034, subdivision (b). The procedure for seeking attorney fees on appeal is addressed in California Rules of Court, rule 3.1702(c). We generally do not award fees in the first instance except on a motion for sanctions for a frivolous appeal. (See Cal. Rules of Court, rule 8.276.) Here, we decline to determine in the first instance whether respondents are entitled to attorney fees on appeal and, if so, the amount.